RICHARD G. CHEEK v. SAMUEL H. POOLE AND JOHNSON, POOLE, WEBSTER & BOST

No. 8920SC9

(Filed 17 April 1990)

1. **Limitation of Actions § 8 (NCI3d) — legal malpractice — statute of limitations — not readily apparent exception — summary judgment improper**

   The trial court erred by granting summary judgment for defendants on the statute of limitations in a legal malpractice action where plaintiff alleged that defendants had been negligent in failing to advise him that a consent judgment would require him to pay his ex-wife one-half his retirement pay even after his wife remarried. Although plaintiff filed the complaint more than three years from the date of the allegedly negligent acts of defendants, the "not readily apparent" exception to N.C.G.S. § 1-15(c) would grant an additional one year; there was a genuine issue of fact as to whether a reasonable person should have discovered that the provision in the consent judgment relating to retirement benefits did not provide for its termination upon the wife's remarriage.

   **Am Jur 2d, Attorneys at Law §§ 220, 221.**

2. **Attorneys at Law § 5.1 (NCI3d) — legal malpractice — contributory negligence — summary judgment improper**

   Defendants were not entitled to summary judgment as a matter of law on the issue of contributory negligence in a legal malpractice claim based on a failure to adequately advise plaintiff on the terms of the separation agreement where the evidence raised genuine issues of fact on the question of plaintiff's reasonableness in executing the consent judgment.

   **Am Jur 2d, Attorneys at Law §§ 224, 227.**

3. **Rules of Civil Procedure § 56.2 (NCI3d); Attorneys at Law § 5.1 (NCI3d) — legal malpractice — summary judgment hearing — burden of proof**

   Plaintiff in a legal malpractice action did not have the burden of proving at a summary judgment hearing that defendants breached the applicable standard of care. Plaintiff was required to produce evidence on the standard of care only

CHEEK v. POOLE

[98 N.C. App. 158 (1990)]

if defendants first produced evidence that they had complied with the standard of care in the community; since defendants offered no evidence on the standard of care in the community or on proximate cause, they cannot now complain that plaintiff offered no evidence on these issues.

**Am Jur 2d, Attorneys at Law § 223.**

4. **Appeal and Error § 45.1 (NCI3d)— failure to argue issue in brief—issue not addressed**

Defendants' contention that plaintiff's acceptance of remedies under a consent judgment barred his action for legal malpractice arising from the consent judgment was not addressed since it was not argued in defendants' brief. N. C. Rules of Appellate Procedure, Rule 28(a).

**Am Jur 2d, Appeal and Error § 491.**

APPEAL by plaintiff from judgment entered 15 August 1988 by *Judge Thomas W. Seay, Jr.* in MOORE County Superior Court. Heard in the Court of Appeals 25 August 1989.

*Thigpen and Evans, by John B. Evans, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Ronald C. Dilthey and Susan K. Burkhart, for defendant-appellees.*

GREENE, Judge.

Plaintiff appeals the trial court's entry of summary judgment for defendants Samuel H. Poole ("Poole"), William C. Bost ("Bost"), and Johnson, Poole, Webster & Bost ("law firm") in plaintiff's legal malpractice lawsuit.

Plaintiff retained defendants to represent him in defense of claims by plaintiff's wife ("Wife"). Wife had filed suit against plaintiff, alleging adultery and requesting divorce, alimony pendente lite, permanent alimony and expenses of the action. Plaintiff corresponded with Poole for approximately nine months, stating his desired terms of agreement settling Wife's claims. Before actual trial, Poole and Wife's counsel negotiated and reached settlement. Subsequently, the matter was again set before the trial court, at which time a consent judgment was presented to the court, signed by plaintiff and Wife and to which all consented. At that hearing, Bost was present, representing plaintiff. The trial judge

CHEEK v. POOLE

[98 N.C. App. 158 (1990)]

approved the terms of the proposed judgment and signed the judgment on 9 August 1984. The terms of the judgment, which also granted the parties an uncontested final divorce, included the following provisions:

1. Defendant shall pay to plaintiff Five Hundred ($500.00) Dollars a month as permanent alimony[,] which sum of permanent alimony shall be increased to Six Hundred ($600.00) Dollars a month when their daughter completes her schooling. The permanent alimony shall be paid to plaintiff by the first day of ea[c]h month until plaintiff remarries or dies, or defendant dies.

2. Defendant shall pay to plaintiff one-half (½) of his net Air Force retirement pay.

3. Defendant shall pay plaintiff's medical and dental bills through his Air Force benefits and NATO benefits.

4. Defendant shall obtain a life insurance policy in the amount of One Hundred Thousand ($100,000.00) Dollars, making plaintiff the irrevocable beneficiary and shall provide a copy of the policy and yearly statements from the company showing the premiums are paid in full and a statement from the insurance company that [plaintiff] is the irrevocable beneficiary of that policy within fifteen (15) days from the date of this Consent Judgment.

5. As a mutually satisfactory division of all marital property in full and complete satisfaction of any and all claims either may have against the other, including the right to equitable distribution under the North Carolina General Statute § 50-20, the plaintiff shall have the following properties as her sole and separate property. . . .

After Wife remarried on 6 June 1987, plaintiff terminated his payments to Wife of one-half of his Air Force retirement pay. Subsequently, Wife instituted contempt proceedings on the grounds that plaintiff had failed to comply with the consent judgment and the court found plaintiff in contempt of court.

In the complaint filed on 9 September 1987, plaintiff alleged that defendants were negligent in failing to advise him that plaintiff's payments of half of the Air Force retirement benefits would continue after Wife's remarriage and that as a direct and proximate result of the negligence of defendants, the plaintiff suffered damages.

CHEEK v. POOLE

[98 N.C. App. 158 (1990)]

In answer, defendants denied the allegations of the complaint and asserted several affirmative defenses, including statutes of limitation, contributory negligence, and election of remedies. Defendants moved for summary judgment. At the summary judgment hearing, defendants introduced into evidence an affidavit from the attorney representing Wife in the divorce proceedings, stating that plaintiff reviewed and read the consent judgment moments before signing it on 9 August 1984. Defendant Poole submitted an affidavit stating

> At no time was [plaintiff] ever advised that the payment of one-half of his net retirement pay from the U. S. Government would be treated as an alimony payment or would terminate upon remarriage by [Wife]. . . . Remarriage by [Wife] would have no effect on [plaintiff's] continuing obligation to pay one-half of his retirement pay to [Wife] as an equitable distribution of their marital property.

Both affidavits introduced by defendants contained language expressing the opinion that the remarriage of Wife would have no effect on the plaintiff's continuing obligation to pay one-half of the Air Force retirement benefits to the Wife.

In response, plaintiff introduced evidence at the summary judgment hearing that it was always his understanding that any requirement to pay a portion of his Air Force retirement benefits to Wife was to be terminated upon Wife's remarriage. Plaintiff introduced into evidence a document typed on defendant's stationery, the terms of which plaintiff said he received from Poole several days after the parties had reached oral settlement in court. This document contained the following language:

> She is to receive ½ of the net retirement pay from the U.S. Government plus $500.00 per month until the last daughter is out of school, at which time it increases to $600.00 per month. (This terminates on her death or remarriage, and is identified as alimony.) There is to be up to $100,000.00 in insurance on his life payable to her (this provision also terminates at her death or remarriage).

On 3 May 1987, Wife requested plaintiff sign a form which would ensure her continued receipt directly from the Air Force of one-half of plaintiff's retirement benefits after her remarriage. Plaintiff immediately telephoned defendant law firm to inquire about Wife's request and according to plaintiff, defendant Bost advised

him that it would be appropriate to "pro rate" the retirement payments until 6 June 1987, the date of Wife's remarriage, then cease the payments. At a later date, plaintiff also talked to Poole, who told plaintiff that he was in full agreement that the payments should be 'pro-rated' up until the date of Wife's remarriage, according to plaintiff's testimony. Plaintiff also testified that Poole stated that "everything is supposed to be terminated upon the remarriage as I understand it. . . . Well, it may—it may take a hearing to clarify it . . . [t]his may take a hearing."

---

The issues presented are: I) whether plaintiff's action against defendants is barred by the statute of limitations; II) whether plaintiff was contributorily negligent as a matter of law; and III) whether defendants were free of negligence as a matter of law.

Summary judgment is appropriate if the movant shows no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Foard v. Jarman*, 93 N.C. App. 515, 518, 378 S.E.2d 571, 572, *reversed on other grounds*, 326 N.C. 24, 387 S.E.2d 162 (1990). An issue is material when the facts on which it is based would constitute a legal defense which would prevent a non-movant from prevailing. *Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). To entitle one to summary judgment, the movant must conclusively establish "a complete defense or legal bar to the non-movant's claim." *Virginia Elec. and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 190-91, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986) (citations omitted). "The burden rests on the movant to make a conclusive showing; until then, the non-movant has no burden to produce evidence." *Id.* (citation omitted). When movant is the defendant, this rule placing the burden on the movant reverses the usual trial burdens. *Clodfelter v. Bates*, 44 N.C. App. 107, 111, 260 S.E.2d 672, 675, *cert. denied*, 299 N.C. 329, 265 S.E.2d 394 (1980). If movant fails in this showing, summary judgment is improper, regardless of whether nonmovant makes any showing. *Bernick v. Jurden*, 306 N.C. 435, 441, 293 S.E.2d 405, 409 (1982) (citations omitted). "In the absence of such proof, plaintiff [non-movant is] not required to show anything at the hearing; for in a hearing on a motion for summary judgment[,] the non-movant, unlike a plaintiff at trial, does not have to automatically make out a *prima facie* case, but only has to refute any showing made that his case is fatally deficient." *Riddle v. Nelson*, 84 N.C. App.

656, 659, 353 S.E.2d 866, 868 (1987) (citation omitted). Guided by these principles, we review the issues presented by this appeal.

I

Statute of Limitations

[1] Plaintiff claims that defendants were negligent on 9 August 1984, when they failed to advise him of the consequences of signing the consent judgment. This action for legal malpractice was filed on 9 September 1987, within four years of the allegedly negligent act.

Because the complaint was filed beyond three years from the date of the allegedly negligent acts of defendants, we must decide whether plaintiff qualifies for a statutory one-year extension of the primary three-year statute of limitations. N.C.G.S. §§ 1-15(c) (1989); 1-52(5) (1989). Section 1-15(c) provides for a minimum three-year statute of limitations, with two exceptions:

> [(1)] an additional one-year-from-discovery period for injuries 'not readily apparent[,]' subject to a four-year period of repose commencing with defendant's last act giving rise to the cause of action; and

> [(2)] an additional one-year-from-discovery period for foreign objects[,] subject to a ten-year period of repose again commencing with the last act of defendant giving rise to the cause of action.

*Foard*, at 520, 378 S.E.2d at 573, citing *Black v. Littlejohn*, 312 N.C. 626, 634, 325 S.E.2d 469, 475 (1985).

The 'foreign object' exception does not apply to this case, and the question is whether the injury to plaintiff was "not readily apparent" within the meaning of the first exception, above. Generally, injuries or harm caused are

> "not readily apparent" until plaintiff discovers or "in the exercise of reasonable care, should [discover] . . . that [he] . . . was injured as a result of defendant's wrongdoing. . . ." Discovery of the injury does not occur in a legal sense, "[u]ntil plaintiff discovers the wrongful conduct of the defendant. . . ." When the evidence is not conclusive or is conflicting, the question of when the plaintiff first discovered or should have discovered that [he] was injured as a result of the defendant's alleged

CHEEK v. POOLE

[98 N.C. App. 158 (1990)]

negligence . . . is one of fact for the jury and summary judgment is inappropriate.

*Foard*, at 520-21, 378 S.E.2d at 574.

Plaintiff, while admitting that he read the consent judgment before signing it, asserts that the import of the retirement pay provision was 'not readily apparent' to him in light of his previous conversations with defendant Poole, and thus his cause of action did not accrue until Wife, on 3 May 1987, requested that he execute a document ensuring the continued payment of the retirement benefits. Defendants countered this assertion by arguing that a " 'person signing a written instrument is under a duty to read it for his own protection, and ordinarily is charged with knowledge of its contents.' " *Biesecker v. Biesecker*, 62 N.C. App. 282, 285, 302 S.E.2d 826, 828-29 (1983) (citations omitted). Defendants argue that plaintiff cannot now claim that plaintiff's injuries caused by defendants' negligence on 9 August 1984 were 'not readily apparent' because as a matter of law plaintiff had knowledge of the legal significance of the language in the consent judgment.

The general rule is that one executing a document drafted by another has knowledge of its contents, "subject to the qualification that nothing has been said or done to mislead [that person] or to put a man of reasonable business prudence off his guard in the matter." *Elam v. Smithdeal Realty and Ins. Co.*, 182 N.C. 600, 603, 109 S.E. 632, 634 (1921) (citations omitted).

In this case, plaintiff argues and there is evidence in the record, when considered in the light most favorable to plaintiff, that defendants advised plaintiff both before and after the execution of the consent judgment, and contrary to the terms of the consent judgment,[1] that the retirement payment obligation terminated upon remarriage of Wife. If these facts are true, they are some evidence that defendants either did not "exercise reasonable and ordinary care and diligence in the use of [their] skill and in the application of [their] knowledge to [their] client's cause" or that they did not "exert [their] best judgment in the prosecution of the litigation

---

1. Because neither party argues the issue, we assume for the purposes of this opinion, that the language of the consent judgment regarding the Air Force retirement benefits requires plaintiff to continue making retirement payments to Wife beyond her remarriage.

entrusted to [them]."[2] *Hodges v. Carter*, 239 N.C. 517, 519, 80 S.E.2d 144, 146 (1954); *see* R. Mallen & J. Smith, *Legal Malpractice* § 19.5 (3d ed. 1989) ("The attorney should review the contract and advise the client concerning its import and the consequences which will result from its execution."). Assuming defendants were negligent in failing to advise the plaintiff of the consequences of the judgment, a question not now before us, plaintiff must nonetheless act with reasonable prudence in his execution of the consent judgment. *Harris v. Bingham*, 246 N.C. 77, 79, 97 S.E.2d 453, 455 (1957) (when plaintiff "observes a violation of duty which imperils him, he must be vigilant in attempting to avoid injury to himself").

Viewed in the light most favorable to plaintiff, the evidence in this record discloses genuine issues of fact regarding whether defendants' allegedly negligent acts were 'readily apparent' to plaintiff at the time he executed the consent judgment. Although the evidence is that plaintiff read the consent judgment, a genuine issue of fact remains as to whether a reasonable person should have discovered that the provision in the consent judgment relating to retirement benefits did not provide for its termination upon Wife's remarriage. What is reasonable must be evaluated in the context of any advice from the attorney that the benefits would terminate upon Wife's remarriage. Accordingly, the question of whether plaintiff is entitled to the one-year extension provided for in N.C.G.S. § 1-15(c) is not subject to resolution as a matter of law and must be resolved by a factfinder.

## II

### Contributory Negligence

[2] Our determination that the statute of limitations issue presents genuine issues of fact also affects disposition of the contributory negligence issue. In both instances, the question is whether plaintiff acted with reasonable prudence in executing the consent judgment. *See Hodge v. First Atlantic Corp.*, 6 N.C. App. 353, 358, 169 S.E.2d 917, 921 (1969) ("the test of the negligence of the client is whether he acted as a man of ordinary prudence while engaged in transacting important business . . ."). Since we have decided that the evidence

---

2. Plaintiff did not allege and does not now contend that defendants did not possess "the requisite degree of learning, skill, and ability necessary to the practice of [their] profession, and which others similarly situated ordinarily possess . . ." *See Hodges*, at 519, 80 S.E.2d at 145-46.

CHEEK v. POOLE

[98 N.C. App. 158 (1990)]

presented raises genuine issues of fact on the question of plaintiff's reasonableness in executing the consent judgment, defendants are not entitled to summary judgment as a matter of law, based on plaintiff's contributory negligence.

## III

### Defendants' Negligence

[3] Defendants argue that even assuming they failed to properly advise plaintiff of the consequences of the consent judgment, summary judgment was nonetheless appropriate because plaintiff presented no evidence that "the applicable standard of care required defendants to explain [to plaintiff] every paragraph of the consent judgment." We disagree.

At trial, plaintiff has the burden of proving that defendants breached the standard of care of other "members of the profession in the same or similar locality under similar circumstances." *Progressive Sales, Inc. v. Williams, Willeford, Boger, Grady & Davis*, 86 N.C. App. 51, 55, 356 S.E.2d 372, 375 (1987) ("[a] plaintiff in a legal malpractice action must prove by a preponderance of the evidence that the attorney breached the duties owed to his client . . ."). However, in this summary judgment proceeding, plaintiff was required to produce evidence on the standard of care only if defendants first produced evidence that they in fact complied with the standard of care in the community. *Beaver v. Hancock*, 72 N.C. App. 306, 311, 324 S.E.2d 294, 298 (1985). As noted earlier, in a summary judgment proceeding, the nonmovant, here plaintiff, is not required to make out a *prima facie* case, but only "has to refute any showing made that his case is fatally deficient." *Riddle*, at 659, 353 S.E.2d at 868. Accordingly, since defendants offered no evidence on the standard of care in the community, they cannot now complain that plaintiff offered no evidence on this issue. *See Foard*, 326 N.C. at 27, 387 S.E.2d at 166 (in a medical malpractice action, defendants were entitled to summary judgment when they offered evidence that their actions met the standard of care in similar communities and plaintiff offered no contrary evidence).

Defendants further argue that they are entitled to summary judgment "on the ground that plaintiff failed to offer any evidence on the element of proximate causation." Again, we disagree. Plaintiff has no obligation to offer any evidence on proximate causation

until after defendants come forward as movants in the summary judgment proceeding and offer some evidence on the lack of proximate causation. *See Rorrer v. Cooke*, 313 N.C. 338, 360, 329 S.E.2d 355, 369 (1985) (summary judgment for defendant-attorneys is proper when plaintiff-client fails to offer evidence countering defendants' evidence on the issue of proximate cause). In *Rorrer*, unlike the facts presented in this case, defendants "submitted many affidavits, a number of which specifically address the issue of whether the alleged negligence of [defendant] was a proximate cause" of plaintiff's injuries. *Id.* Our Supreme Court concluded that defendant had placed the issue of causation before the trial court and that it "became incumbent upon plaintiff to submit affidavits in opposition to this and other issues so presented." *Id.*

IV

Election of Remedies

[4] In their answer, defendants pled as a further defense that plaintiff's action against them was barred by the doctrine of "election of remedies." Essentially, they pled that when plaintiff elected to receive benefits under the consent judgment, including the avoidance of contested permanent alimony and equitable distribution, plaintiff was then barred from seeking further relief against the defendants. We do not address the merits of this defense, because defendants abandoned this issue by not arguing it in their brief. N.C.R. App. P. 28(a).

Vacated and remanded.

Judges JOHNSON and ORR concur.